[Civ. No. 7075. Second Appellate District, Division Two.—April 13, 1932.]

LEON BEAUMON, Respondent, v. KITTLE MANUFAC-
TURING COMPANY (a Corporation), Appellant.

Stick, Moerdyke & Gibson and John C. Stick for Appel-
lant.

L. R. Wharton and Roscoe R. Hess for Respondent.

THOMPSON (IRA F.), J.—This appeal is prosecuted by
the defendant from a judgment rendered against it and in
favor of the plaintiff in the sum of $2,500 and costs. The
facts necessary to an understanding of the discussion of the
questions raised are as follows: Leon Beaumon, the respond-
ent, conceived a device attachable to an automobile in the
shape of an arrow, containing a Neon gas-filled tube, means
for lighting the same from the electrical current of the auto-

mobile, visible when lighted from either the rear or the front of the car and adjustable by the moving of a lever so as to indicate to both overtaking and oncoming vehicles a change of direction by the automobile so equipped and whether the change would be right or left as well as whether the automobile was making a stop. On December 31, 1927, the respondent entered into a contract with appellant whereby the latter was licensed to manufacture and sell the device, to cover which an application for patent was pending. The action was one to recover what it is contended was fixed by the contract as the minimum annual royalty. The paragraphs of that instrument which are directly involved in the principal argument of the appellant are as follows:

"Second: The licensee agrees to pay to the licensor a royalty or license fee in the amount of thirty cents (30c) on, and for each and every device of whatever character or nature, including Neon or other luminescent vapor tube embodied in said patentable improvement, manufactured, used and sold, by or at the instance of the licensee, during the first year from and after date hereof, and a royalty of thirty cents (30c). on, and for each and every such device manufactured, used and sold during the second and each subsequent year thereafter. All royalties shall be payable monthly on or before the tenth (10th) day of each calendar month, at Los Angeles, California, to the licensor or his authorized representative.

"Third: The licensee agrees to pay to the licensor a total minimum royalty during each year of this agreement in the amount of twenty-five hundred and no/100 dollars ($2,500.00), and if the total royalties accruing to the licensor shall not equal such minimum amount, then the licensee shall pay to the licensor the difference between said minimum amount and the actual accrued royalties, and the payment of said minimum amount each year shall operate as a renewal of this license for a succeeding year.

"Seventh: The licensee agrees to prepare and submit to the licensor, on or before the tenth day of each month, a detailed statement showing the number of devices manufactured, sold and used during the previous calendar month and the amount of royalty due the licensor therefor, and at the end of each calendar month such statement shall

show the total number of devices manufactured, sold and used during the year and the amount of royalty paid to and the unpaid balance due the licensor in accordance with the terms hereof. Payment for royalties due the licensor shall accompany said monthly statements. The sale of the article by licensee determines liability of licensee to licensor for payment of royalty.

"Eleventh: The licensor may terminate this agreement upon thirty days' written notice to the licensee, if the said licensee fails, neglects or refuses to pay all and singular royalties when and as the same may become due and payable and/or for the failure of the licensee to pay the minimum amounts herein provided, on or before the expiration of each calendar year from and after date hereof, and/or for the failure of the licensee to keep and perform all and singular covenants named herein; but in such event, the licensee shall not thereby be discharged from any liability to the licensor for any royalties due at the time of the service of such notice. The licensee may terminate this agreement only at the end of any calendar year during the life of this agreement by serving written notice upon the licensor of intention so to do, not less than thirty days (30) prior to the expiration of any year, and the payment of all royalties and moneys due the licensor at the time of such termination."

It is asserted and argued with great earnestness that the appellant assumed no absolute liability to pay a minimum royalty by the language quoted. Our attention is directed to previous rough drafts of the contract for the purpose of explaining an asserted ambiguity in the one which was signed by the parties and from which we have extracted the foregoing portions. The first rule respecting the interpretation of contracts is that we may not apply one of those well-recognized rules as an aid in its construction until we shall first be satisfied that the language is fairly susceptible of two different interpretations—in other words, we cannot and should not attempt to wrench the language from its ordinary meaning. And although the argument of appellant is earnest and ingenious, we have concluded that there exists in the present cause no reason to call for aid in arriving at the intent of the parties.

First, they agreed upon a royalty for each device, which royalty, according to paragraph "seventh", was to be determined by its sale and not by its manufacture. The appellant agreed "to pay" these amounts and to account therefor on or before the tenth of each month. Second, appellant agreed "to pay" a "minimum royalty during each year of this agreement in the amount of twenty-five hundred" dollars, and if the royalties upon the sold devices failed to equal the named sum it is stated that appellant "shall pay the difference". It is difficult to perceive how language could be made more clear or explicit. It is said, however, that the clause "and the payment of said minimum amount each year shall operate as a renewal of this license for a succeeding year" indicates that the payment of the minimum amount should be optional with the licensee. We cannot understand the contract in that light in view of the express agreement to pay, fortified as it is by a provision in paragraph "eleventh" for the termination of the contract by the appellant, and fixing the conditions thereof. To adopt the suggestion of appellant would not only do violence to the agreement "to pay" but also render nugatory the provision for termination by the licensee. All that would be required for its termination or cancellation under the theory thus advanced would be to refuse to do that which it agreed to do. The fair import of the quoted clause is that the payment of the minimum royalty shall extend the contract for a year so that the licensor may not terminate under those provisions of paragraph "eleventh" giving him that right for failure on the part of licensee to pay.

It is next argued that there was a failure of consideration and that by reason thereof appellant was under no liability to pay. This argument proceeds upon the theory that the claims allowed by the patent office were not sufficient to give the appellant the exclusive right to manufacture the device and not as broad as those anticipated at the time the contract was executed. A complete answer to this contention is contained in the finding of the court upon the issue and certain undisputed facts, together with slight additional testimony. The finding is as follows:

"With respect to the allegations contained in Para-

graph Two of the second defense of the answer of the defendant, the Court finds:

"That it is not true that there was any failure of consideration on the part of the plaintiff herein in respect to the agreement set forth at length in the complaint.

"That at the date of the execution of said agreement, the defendant had never seen application number 172709 of the plaintiff herein, filed for letters patent of the United States on March 4th, 1927, or any copy thereof, and had no knowledge of the contents of said application other than the knowledge that the plaintiff herein had filed said application for letters patent upon a device practically identical in its operative principles, to a device which the plaintiff showed to the officers of the defendant on or about November 30, 1927.

"That prior to the execution of said contract, said defendant by its officers knew that all of the eight claims originally made in said application had been cancelled and further knew that the patent attorney of the plaintiff, who was at said time also the patent attorney of the defendant, had not at the date of the execution of said contract revised any of said claims but was contemplating the filing of amended or revised claims.

"That the device which was shown by the plaintiff to the officers of the defendant as aforesaid was a device for a direction signal arm to be used on an automobile, embodying the use of Neon or other luminescent tubes as a lighting medium.

"That the Commissioner of Patents at Washington, D. C., did on September 26th, 1928, reject all of the original claims, eight in number, contained in said application number 172709, and that the defendant by its officers had full knowledge thereof prior to the execution of said contract.

"That the plaintiff at no time made any representation to the defendant that said application involved any basic patent which would prevent all other persons from manufacturing or selling direction signals for automobiles embodying Neon or other luminescent tubes as a lighting medium.

"That the subject-matter of said contract was said device shown by the plaintiff to the officers of the defendant as aforesaid.

"That the plaintiff herein by his said patent attorney on March 31st, 1928, added to said application claims nine to twelve, inclusive, and cancelled claims one to eight.

"That subsequently said Commissioner of Patents rejected said claims nine to twelve, and that thereafter, to-wit: on November 12th, 1928, the plaintiff herein by his said patent attorney, cancelled claims nine to twelve, inclusive, and added claims thirteen to sixteen, inclusive, and that on December 3rd, 1928, plaintiff herein, by his said patent attorney, amended claims thirteen and fourteen.

"That on February 16th, 1929, the Commissioner of Patents allowed said claims thirteen to sixteen, inclusive, as amended, and that said claims cover patentable improvements in a direction signal of the character shown by the plaintiff to the officers of the defendant as aforesaid.

"The Court further finds that the subject-matter of said agreement between the parties hereto was not the claims in said application number 172709, but was the improvements in direction signals for automobiles for which the plaintiff made said application, and that said allowed claims thirteen to sixteen, inclusive, protect the operating mechanism for the specific structure which was the subject-matter of said agreement and offered not only substantial protection against competition but that the license granted to the defendant in said agreement is an exclusive license, and that the manufacture and sale of the device which was the subject-matter of the agreement, by any parties other than the defendant therein, would be an infringement of said allowed claims, number thirteen to sixteen, inclusive, and of the patent thereon when and if the same is issued, and that there is no evidence that convinces the Court that the defendant, in the manufacture and sale of said device which was the subject-matter of said agreement and which was shown by the plaintiff to the officers of the defendant as aforesaid, would be subject to any action or be liable for infringement of any patent whatsoever, whether issued or applied for."

It is undisputed that the first claims were rejected before the contract was executed and that the other claims were made, canceled, amended and allowed as recited in the finding. The respondent testified that he had a conversa-

tion with the secretary of appellant after the rejection of the first eight claims and before the contract was signed in which the secretary said, after being informed that the patent attorney would ''get what was possible'', as follows: ''Well, we are satisfied, if he can get any little thing to cover the most vital part of the patent, just to protect us. If not, we will still continue to manufacture until dog eats dog.'' One of the patent attorneys testified that the claims allowed afforded ''protection for the specific kind of product that the Kittle Manufacturing Company had been making, but certainly not to any other kind that any other one person might want to make'', and further explained that it would protect against the manufacture of a rigid arm with a Neon light mounted longitudinally, supported inwardly for protecting it against damage, although it would not prevent another from constructing an arm with the tube on the outside or from making one ''only inside of one of the sides of the arm'', which latter, of course, would be visible only from either the front or the rear while the signal in question was visible to either overtaking or approaching traffic. He also added that it would make no difference whether the tube was intermittently lighted from the spark-plugs or whether it was operated by a lever or otherwise, yet there would be an infringement. It is plain, we think, that there was ample evidence to support the conclusion of the court that the appellant got that for which it contracted.

Judgment affirmed.

Craig, Acting P. J., and Fricke, J., *pro tem.*, concurred.